UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                            Case No. 21-cr-200-pp

ALEJANDRO HERNANDEZ MELCHOR,

        Defendant.

___

**ORDER CONSTRUING SEPTEMBER 2, 2022 LETTER FROM DEFENSE COUNSEL (DKT. NO. 25) AS MOTION FOR FINDING UNDER FED. R. CRIM. P. 32(c)(1)(A)(ii) THAT INFORMATION IN THE RECORD ENABLES THE COURT TO MEANINGFULLY EXERCISE ITS SENTENCING AUTHORITY WITHOUT A PRESENTENCE INVESTIGATION REPORT AND REQUESTING THAT THE COURT SCHEDULE AN EXPEDITED, COMBINED CHANGE-OF-PLEA AND SENTENCING HEARING AND DENYING THAT MOTION WITHOUT PREJUDICE**

___

      On July 28, 2021, a criminal complaint was filed against the defendant in the Eastern District of Wisconsin, alleging that he had conspired to commit, and had committed, violations of criminal laws prohibiting forced labor, domestic servitude and harboring non-citizens. Dkt. No. 1.

      The defendant was arrested in the Northern District of Florida on September 1, 2021. In an undated bond study prepared sometime before September 2, 2021, the pretrial services office for the Northern District of Florida indicated that "an attempted interview was conducted with defendant since a Spanish interpreter was not available," and that the office had not been able to verify any information. Dkt. No. 6 at 2. The bond study indicated that the defendant was forty-three years old and had been born in Mexico and that

1

his parents and one sister lived in Mexico. Id. While the defendant indicated that he lived in Cairo, Georgia with three friends, he could not remember the address. Id. The defendant indicated that his wife and three children all lived in Mexico. Id. The study indicated that the defendant had come to the United States on a legal U.S. work Visa, but that the government had indicated that the Visa was no longer valid because the defendant had left his employer. Id. at 3.

The bond study indicated that pretrial services knew nothing of the defendant's employment or education histories or the state of his physical health. Id. The defendant told pretrial services that he had no assets and no prior criminal history; pretrial services reported that a check of the National Crime Information Center, as well as state and local records, revealed no criminal history for the defendant. Id.

At the September 2, 2021 initial appearance in Florida, the magistrate judge scheduled a detention hearing for September 7, 2021. Dkt. No. 4-1. At the September 7, 2021 detention hearing, the magistrate judge concluded that the defendant was a risk of flight and a danger to the community and ordered him detained and removed to the Eastern District of Wisconsin. Dkt. Nos. 4-2, 4-3.

On September 28, 2021, a grand jury in the Eastern District of Wisconsin returned a five-count indictment against the defendant, charging him with the offenses alleged in the July 28, 2021 complaint. Dkt. No. 5. On October 15, 2021, the government reported that the defendant faced maximum

2

penalties of twenty years in prison on four of the charges and a maximum penalty of ten years in prison on the fifth. Dkt. No. 8. Magistrate Judge William E. Duffin of the Eastern District of Wisconsin conducted the arraignment and plea hearing and, among other things, ordered the defendant's continued detention. Id.

On January 13, 2022, the defendant filed a motion for bond, indicating that his family had raised $4,000 to post and that if released, he would stay with Maria de Jesus and Gonzalez Carmona in Joliet, Illinois. Dkt. No. 16. Magistrate Judge Duffin denied the motion, stating that "[g]iven the defendant's strong connections to Mexico, minimal connections to the United States, and serious pending charges, the proposed cash bond is insufficient to adequately address the very significant risk of non-appearance." Dkt. No. 17. The defendant filed a document titled "Objections to Magistrate Judge's Order." Dkt. No. 18. He provided facts which he had not provided in the motion—that he had no known criminal record, that his friends and family had sacrificed to pool the $4,000 cash bond and that the defendant was willing to submit to GPS monitoring. Dkt. No. 18. The court did not respond to these objections.[1]

---

[1] As of January 20, 2022, when the defendant filed this document, the case remained in the pretrial motions stage and had not been transferred from the magistrate judge to a district judge. Section 3142 of Title 18 does not provide a procedure for "objecting" to a magistrate judge's decision to order a defendant detained. Section 3142(f)(2) provides that a party may ask a magistrate judge to reopen a detention hearing; the magistrate judge may do so if he or she "finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." The defendant did not file a motion asking the magistrate judge to reopen the

At an April 15, 2022 status conference, defense counsel advised Magistrate Judge Nancy Joseph that the parties had been working on resolving the case and that the defendant had an immigration attorney working with him and communicating with the government. Dkt. No. 20.

On August 30, 2022, the government filed a one-count information. Dkt. No. 23. The information charges the defendant with misprision of a felony in violation of 18 U.S.C. §4. Id. That statute carries a maximum penalty of three years in prison.

The following day, the government filed a plea agreement. Dkt. No. 24. The defendant and his counsel had signed the agreement a few days earlier, on August 27, 2022, and the government had filed it on August 30, 2022. Id. at 14. The agreement indicated that the defendant had agreed to plead guilty to the charge in the information and that the government had agreed to dismiss the indictment. Id. at ¶¶5, 9.

The court—the judge—does not read each plea agreement as it comes in. When the government files an executed plea agreement, the court's staff schedules a change-of-plea hearing, taking into account the hearings already on the court's calendar and the need to set a date far enough in advance to

---

detention hearing (which had been conducted by the magistrate judge in Florida). Under 18 U.S.C. §3145(b), a person who has been ordered detained by a magistrate judge may "file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." The defendant did not file a motion asking this district court to revoke or amend the detention order. The defendant's objections did not constitute either a request for Judge Duffin to reopen the detention hearing or a motion for this court to revoke the detention order.

4

allow the prosecutor, the probation officer and defense counsel to be present. The judge reviews the plea agreement one to two days before the change-of-plea hearing, to prepare for the hearing. Once the court has accepted the defendant's guilty plea, the court schedules the sentencing date, setting it far enough in advance to allow the probation office to prepare a presentence investigation report and to allow the parties to object to that report.

The court's staff had no reason not to follow that procedure in this case, and it did. On August 31, 2022—the same day the court received the plea agreement—the court's staff scheduled a change-of-plea hearing for October 19, 2022. That date is five weeks out, but the court's September calendar is packed and the parties had not notified the court that there was any reason the hearing needed to be scheduled any earlier.

On September 2, 2022, defense counsel filed a letter with the court.[2] Dkt. No. 25. The letter states:

> This week, a plea agreement was filed in Mr. Hernandez Melchor's case. The terms of the plea agreement are that the defendant is going to be pleading to Misprision of a Felony, by way of information. Paragraph 11 of the plea agreement provides that the

---

[2] The court's "Tips for Parties Practicing Before Judge Pepper" (as of June 7, 2022) are available on the court's website, https://www.wied.uscourts.gov/judges/pamela-pepper. Section II(E) says, "If you want me to do something, the best way to ask is to **file a motion**. I've noticed that many lawyers communicate with the court by writing letters. Sometimes I don't know what to do with a letter—are you just writing to provide me with some information? Do you want me to take a particular action? If you file a motion, and state at the end the relief you are requesting, then I'll better know what you need from me, and can respond accordingly. The motion also will trigger the deadlines for responding under our local rules—letters don't do that. If you're just providing me with information, file a "notice." We have procedures for processing and dealing with motions and notices—letters, not so much. So—**file motions or notices, not letters.**"

parties will be recommending that the court decline to order a presentence report. Furthermore, in paragraph 22, the parties agree to recommend a time served disposition with no term of supervised release and that the defendant will voluntarily agree to be deported.

> In short, [the prosecutor] and I are requesting that the court approve of this procedure to expedite Mr. Hernandez Melchor's return to his home country. Yesterday, a date for a plea only was set for October 19, 2022. I am requesting that, if at all possible, an accelerated date be set, wherein, both a plea and disposition can be effectuated.
>
> Thank you for your consideration.

Id.

This letter caused the court to read the plea agreement that had been filed on August 31. Paragraph 11 states:

> The parties agree that information in the record should enable the court to meaningfully exercise its sentencing authority under Title 18, United States Code, Section 3553, and therefore the parties jointly recommend that the court decline to order that a presentence report be prepared, pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii). The parties also jointly request that the court set a combined hearing, to include both defendant's change-of-plea and sentencing.

Dkt. No. 24 at ¶11.

It would have been more appropriate—and efficient—if, prior to or contemporaneously with filing the plea agreement, the parties had filed a separate motion asking the court to make a finding under Fed. R. Crim. P. 32(c)(1)(A)(ii), providing the court with the facts necessary to allow it to make that finding and asking the court to schedule a combined change-of-plea and sentencing hearing as soon as possible. The court was not aware of this request because it does not review plea agreements until shortly before the

6

change-of-plea hearing; its staff would have notified it within twenty-four hours had the parties filed a separate motion.

The parties have agreed that the record "should" enable the court to meaningfully exercise its sentencing authority. Id. Fed. R. Crim. P. 32(c)(1)(A) provides that generally, the probation officer must conduct a presentence investigation and prepare a presentence investigation report to the court prior to sentencing. Section 32(c)(1)(A)(ii) provides an exception to this general requirement when "the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. §3553, and the court explains its finding on the record." Under 18 U.S.C. §3553(a), the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to provide adequate deterrence, to protect the public and to provide the defendant with needed vocational or educational training, medical care or other corrective treatment. The court also must consider the need to avoid unwarranted sentencing disparities and the need to provide restitution to a victim.

The court relies heavily on the probation department's outstanding presentence investigation reports, particularly when it comes to the requirement that the court consider the history and characteristics of the defendant. In this case, the bond study contains *no* information about the defendant's employment, education or health. It reveals where the defendant's

7

parents and one of his sisters live. It reveals that he has a wife and children and explains where they live. The bond study also implies that the defendant is not a U.S. citizen and that while he came to the country legally, he was not legally in the country at the time of the alleged offenses. Otherwise, the court has no information about the defendant's history and characteristics.

The record provides more information about the nature and circumstances of the offense; the complaint provides details, as does the factual basis in the plea agreement.

The court is very uncomfortable imposing sentence with so little information about the defendant, not to mention the fact that the plea agreement calls for restitution (Dkt. No. 24 at ¶29) and the court has no information about what that restitution might be. The parties do not identify the information in the record that they believe is sufficient to allow the court to exercise its sentencing authority. Although the parties never have appeared before the undersigned in this case and even though up until defense counsel filed the letter the court had no familiarity with the case, the parties did not provide the court with any explanation for why they want to skip the presentence investigation report and move as quickly as possible to a combined plea and sentencing hearing. The court suspects it is because they believe that given their guidelines calculations, they anticipate that the court will adopt their recommendation of a sentence of time served, and that the sentence would exceed the high end of the guideline range.

The court's review of the above procedural history, along with the plea agreement and other documents, reveals that the original charges carried maximum prison terms of twenty years for the first four charges and ten for the fifth. The offense to which the defendant has agreed to plead guilty carries a statutory maximum penalty of only three years. The plea agreement indicates that the parties believe that the base offense level for misprision of a felony is 9 under U.S.S.G. §2X4.1(a). Dkt. No. 24 at ¶18. The government has agreed to recommend a 2-level decrease under §3E1.1(a), reducing the offense level to 7. Id. at ¶19. The bond study indicated that the defendant had no prior criminal history, dkt. no. 6 at 3; if true, this means that the defendant's criminal history category is Category I. A defendant whose adjusted offense level is 7 and whose criminal history category is I would face an advisory sentencing range of 0-6 months. The defendant has been in custody for a year—well over that sentencing range. The plea agreement indicates that the parties have agreed to jointly recommend that the court impose a sentence of time served, and that the defendant has agreed to be removed from the United States. Dkt. No. 24 at ¶22.

The court suspects the request in defense counsel's letter was made because the parties believe, based on the above provisions in the plea agreement, that the defendant has served more time than the guidelines call for; they want him to appear for sentencing as soon as possible so that he can return to Mexico. The plea agreement also indicates that the defendant has waived his right to appeal, dkt. no. 24 at ¶34, meaning that once the court

sentences the defendant, the litigation will be concluded unless the court imposes an illegal sentence or the defendant alleges ineffective assistance of counsel regarding the negotiation of the plea agreement.

The court does not believe that the parties' projected Sentencing Guidelines calculations are accurate. They are correct that the guideline applicable to misprision of a felony is U.S.S.G. §2X4.1 That guidelines provides that the base offense level for misprision of a felon is "**9** levels lower than the offense levels or the underlying offense, but in no event less than **4**, or more than **19**." The information says that the "underlying offense" of which the defendant had knowledge was "fraud in foreign labor contracting." Dkt. No. 23. None of the charges in the indictment are referred to as "fraud in foreign labor contracting," but Count Three of the indictment charged the defendant with "Financial Benefit from a Venture Involving Forced Labor" in violation of 18 U.S.C. §§1589(b) and 1594(a). Dkt. No. 5 at 4.

Section 1589(b) states that anyone who "knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a)" commits a felony. Subsection (a) prohibits providing or obtaining labor services from another by (1) force, threats of force, physical restraint or threats of physical restraint, (2) serious harm or threats of serious harm, (3) abuse or threatened abuse of law or legal process or (4) a scheme, plan or pattern intended to cause the person to believe that if the person didn't perform the labor, that person or another person would suffer

10

serious harm or physical restraint. (Section 1594(a) provides that attempt is punishable in the same way as a completed violation of 18 U.S.C. §1589(b).)

The guideline applicable to violations of §1589 is U.S.S.G. §2H4.1. That guideline provides for a base offense level of 22. U.S.S.G. §2H4.1(a)(1). Section 2H4.1(b) lists several bases for enhancements. To determine whether any of those apply, the court must look at the factual basis in the plea agreement. That factual basis states the following:

> In or about April of 2016, the defendant was one of a group of Mexican nationals who was recruited and applied for H-2A visas to enter the United States to work for Garcia & Sons Harvesting ("G&S") and C&D Harvesting ("C&D") on various farms in Georgia. The defendant was an H-2A worder who secured his H-2A visa and employment through C&D. The defendant entered the United States under the auspices of an H-2A visa on two occasions: April 30, 2015, and April 22, 2016 to work for C&D.
>
> The H-2A visa program provides that any applicant who seeks a foreign guest worker visa must make certain sworn, under oath, attestations in the application, including that the employer and its agents have not sought or received payment of any kind from the H-2A worder for any activity related to obtaining labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs. In other words, any person who seeks a visa under the program must submit a form which, under oath, states that he has not paid any money for recruitment and has not been required to provide any security.
>
> The defendant was aware in or about April of 2016 that the workers were illegally being asked to provide cash payments to obtain a H-2A visa to work for G&S and C&D and/or provide collateral such as deeds to property or vehicles to obtain their H-2A visa to work for G&S and C&D. The defendant was aware of this felonious conduct, did not report it, and took an affirmative step to conceal it by helping the other workers process their false and fraudulent H-2A visa applications in which they falsely stated that they had not been asked to make any additional cash payments or put up any collateral to obtain the H2-A visa. Despite knowing that these workers were making sworn, false material statements on their H-2A visa attestations, the defendant assisted other work[er]s

11

> in processing and submitting their H-2A applications to the U.S. government. At no time did the defendant advise any authority of such illegality.

Dkt. No. 24 at ¶6.

Based on this recitation, it does not appear that any of the victims sustained life-threating injuries (U.S.S.G. §2H4.1(b)(1)), or that a dangerous weapon was used (U.S.S.G. §2H4.1(b)(2)), or that any victim was held in peonage or involuntary servitude for more than a year (U.S.S.G. §2H4.1(b)(3)). It is not clear whether any other felony offense was committed in connect with this crime; if so, U.S.S.G. §2H4.1(b)(4) would require an enhancement.

Assuming U.S.S.G. §2H4.1(b)(4) does not apply, the base offense level for what appears to be the underlying offense upon which the misprision charge is based is **22**. Section 2X4.1 requires the court to subtract **9** levels from that **22**, which results in an offense level of **13**. If the court agrees with the parties that the defendant should receive a **2**-level decrease for acceptance of responsibility, his adjusted offense level would be **11**. Adjusted offense level **11** in criminal history category **I** results in an advisory sentencing range of **8-14 months**.

The court's calculations may be wrong. Even if the court's calculations are correct, there may be reasons, based on the defendant's history and characteristics, for the court to impose a within-guidelines sentence of time served. But the court has almost no information about the defendant's history and characteristics.

The court understands that the parties know more about this case than the court does. The court understands that the parties agree that the

defendant should be sentenced as quickly as possible and returned to Mexico as quickly as possible. But sentencing is one of the most critical duties a judge performs. This court tries to be as prepared as possible before sentencing. On this record, the court cannot in good conscience conclude that "the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. §3553."

The court has no desire to keep a defendant in custody longer than is warranted. If the parties file a *motion* asking the court to do so, the court is willing to confer with probation about how long it would take to prepare a truncated presentence report—perhaps only the guidelines calculations and the results of an interview with the defendant—and to set a combined change-of-plea and sentencing hearing just far enough in the future to allow probation to prepare that report. But the court cannot agree that the record contains enough information for the court to meaningfully exercise its sentencing authority.

The court **CONSTRUES** defense counsel's September 2, 2022 letter as a motion for a finding under Fed. R. Crim. P. 32(c)(1)(A)(ii) that no presentence report is required, and **DENIES** that motion without prejudice. Dkt. No. 25.

Dated in Milwaukee, Wisconsin this 2nd day of September, 2022.

BY THE COURT:

_____
HON. PAMELA PEPPER
**Chief United States District Judge**